UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANTHONY HOLLIS,

                    Petitioner,

v.                                        Case No. 6:11-cv-1977-Orl-37DAB

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

                    Respondents.

_____

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions (Doc. No. 15). Petitioner filed a reply to the response (Doc. No. 20).

Petitioner alleges eight claims for relief in his habeas petition. For the following reasons, the petition is denied.

## I.    *Procedural History*

Petitioner was charged by amended information with racketeering (count one), grand theft (count two), organized fraud (count three), six counts of identity theft of a victim under the age of eighteen (counts four through nine), and fifteen counts of identity theft of adult victims (counts ten through twenty four). Prior to trial, the State dismissed

counts five, seven, and seventeen.    A jury found Petitioner guilty as charged of the remaining counts.    The trial court subsequently dismissed the grand theft conviction (count two) and sentenced Petitioner to twenty-five year terms of imprisonment for counts one and three, concurrent fifteen-year terms of imprisonment for counts four, six, eight, and nine, and to concurrent five-year terms of imprisonment for counts ten through sixteen and eighteen through twenty four.    Petitioner appealed and the Fifth District Court of Appeal of Florida affirmed the convictions.

Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.    The state court denied the motion.    Petitioner appealed, and the Fifth District Court of Appeal of Florida affirmed *per curiam*.

## II.    Legal Standards

### A.    Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision."   *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider."   *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).   The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts.   Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."   *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner

3

shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B.   Standard for Ineffective Assistance of Counsel

The Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1]   *Id*. at 687-88.   A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.   *Id*. at 689-90.   "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."   *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume

---

[1]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the Supreme Court of the United States clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

> effectiveness and should always avoid second guessing with the benefit of
> hindsight.   *Strickland* encourages reviewing courts to allow lawyers broad
> discretion to represent their clients by pursuing their own strategy. We are
> not interested in grading lawyers' performances; we are interested in
> whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).   Under

those rules and presumptions, "the cases in which habeas petitioners can properly prevail

on the ground of ineffective assistance of counsel are few and far between."   *Rogers v.

Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

III.   *Analysis*

   A.   *Claims One, Two, and Eight (e) and (f)*

   In claim one, Petitioner contends that the trial court violated his constitutional

rights by admitting ATM photographs which were not disclosed to him in violation of

*Brady v. Maryland*, 373 U.S. 83 (1963), and which lacked the proper predicate. (Doc. No. 1

at 5.)   In claim two, Petitioner asserts that the trial court violated his constitutional rights

by allowing evidence of his prior bad acts and crimes to be admitted.   In claim eight (e),

Petitioner maintains that counsel rendered ineffective assistance by failing to object to

improper statements made by the prosecutor in closing argument.   Petitioner further

asserts in claim eight (f) that counsel rendered ineffective assistance by failing to argue

that Stacy Turner ("Turner"), an investigator for Bank of America, was not qualified to

express an opinion about the ATM photographs that were admitted into evidence.

Respondents argue that claims one and two were not raised as federal issues in the state

court and claims eight (e) and (f) were not raised on appeal, and thus, these claims are procedurally barred from review.

One procedural requirement set forth in the AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law.   28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-43 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> (A)   the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)   (i)   there is an absence of available State corrective process; or
>
>    (ii)   circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), *holding modified by Martinez v. Ryan*, 132 S. Ct. 1309 (2012).   In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court.   *Id*. at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which

6

the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted).   The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.   *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998).   The Supreme Court of the United States has observed that "Congress surely meant that exhaustion be serious and meaningful." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992).   Furthermore, the Court explained:

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court.   Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claims on the merits.

*Id.*; *see also Henderson v. Campbell*, 353 F.3d 880, 898 n.25 (11th Cir. 2003) ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").

In the instant case, the record establishes that Petitioner did not raise claims one or two as federal issues in the state court.   *See* App. G; *see also* App. J at 22-42; Doc. No.

7

17-1 at 10-16, 23-29.    Petitioner cited only state law in support of these claims. Furthermore, although Petitioner filed an appellate brief on appeal from the denial of his Rule 3.850 motion, he did not appeal the trial court's denial of claims eight (e) and (f). (App. Z.)   Petitioner's failure to specifically raise these claims in his initial brief on appeal resulted in the abandonment of the claims.    *See Wood v. Tucker*, No. 5:10cv200/RS/EMT, 2012 WL 2511428, at *7 n.10 (N.D. Fla. May 31, 2012) (citing *Ward v. State*, 19 So. 3d 1060, 1061 (Fla. 5th DCA 2009) (*en banc*) (holding that although state procedural rules do not require an appellant to file an initial brief on appeal from the summary denial of a Rule 3.850 motion, if an appellant does file an initial brief, the failure to raise certain issues in the brief results in the abandonment of those claims)); *see also Austin v. State*, 968 So. 2d 1049 (Fla. 5th DCA 2007) (holding claims not raised in appellate brief were abandoned).    Thus, these claims are unexhausted and procedurally barred from review by this Court absent an exception to the procedural default bar.

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default.    *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent."    *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Petitioner has not shown the applicability of the actual innocence exception. Likewise, Petitioner has not shown cause or prejudice that would excuse any procedural default.   Therefore, claims one, two, and eight (e) and (f) are procedurally barred.

Alternatively, the Court notes that if these claims were not procedurally barred, they would be denied pursuant to Section 2254(d).   With respect to claim one, to prevail on a claim brought pursuant to *Brady*, Petitioner must demonstrate the following:

> (1) that the Government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

*United States v. Meros*, 866 F.2d 1304, 1308 (11th Cir. 1989).   At trial, counsel objected to the admission of ATM photographs that depicted an African-American male.   Counsel argued that the photographs had not been provided to the defense, and the State subsequently conceded that a possibility existed that the photographs had been misplaced.   The trial court allowed the photographs to be admitted.   Nevertheless, no one could identify the person in the photographs because of their poor quality.

Even discounting the ATM photographs, the evidence of Petitioner's guilt was substantial.   Numerous witnesses testified that their names and social security numbers were used without their authorization on McKay Scholarship[2] applications that were

---

[2]The McKay Scholarship Program is a program administered by the State of Florida to provide parents with disabled children with money for the cost of private

submitted to the Florida Department of Education ("FDOE") to obtain money to attend either the Cyber Tech Academy or the Primary Prep School.

Erica Kee ("Kee") testified that Petitioner directed her to complete compliance form applications for the McKay Scholarship Program.   Kee said that Petitioner told her the information to place on the applications, including the names Mary Cook and Terry Nelson as the administrators of Cyber Tech Academy and Primary Prep School.   Kee further testified that she observed checks from the State of Florida in Petitioner's possession that were subsequently deposited in the Bank of America and endorsed to Cyber Tech Academy.

Yolanda Pearson ("Pearson") testified that Petitioner obtained virtual offices for Cyber Tech Academy and Primary Prep School that were linked to thirty-two fraudulent McKay Scholarship applications.   She further indicated that Petitioner directed her to deposit checks from the State of Florida endorsed to Cyber Tech Academy.

Jean Miller, the Director of the McKay Scholarship Program for the FDOE, testified that her office received twelve telephone calls from a number belonging to Enzyte Corporation, which was registered to Petitioner.     Claire Phillipe ("Phillipe"), an employee of the FDOE, testified that she sent a letter to Mary Cook, the purported Primary Prep School administrator, as part of an investigation.   Phillipe said she later

---

school.

received a phone call from the Enzyte Corporation's telephone number, and the caller identified himself as Mark Cook and explained he was calling in reference to a letter sent to Mary Cook.   Jennifer Walker ("Walker"), an investigator for the Florida Department of Law Enforcement, testified that she heard Petitioner tell the receptionist at Execu Suites that he signed the lease for the mail box for Primary Prep School.   Walker also observed Petitioner pick up the letter for Primary Prep School.

Colleen Cubbage ("Cubbage"), an employee at Execu Suites, identified Petitioner and Pearson as the individuals who rented an address for Primary Prep School. Cubbage said that Petitioner signed the application "Bill Maxwell".   Linda Yee, a branch manager for Am South Bank, identified Petitioner and Pearson as the individuals who opened an account for Primary Prep School, although Pearson was the only account holder listed on the account.   Finally, a latent print examiner testified that Petitioner's fingerprints were on three checks from the State of Florida endorsed to Cyber Tech Academy.

Kee and Pearson identified Petitioner as the perpetrator of the offenses, and the testimony of the remaining witnesses substantiated their testimony.   In sum, no reasonable probability exists that the outcome of the trial would have been different had the ATM photographs been provided to the defense.

Petitioner also has not established that the trial court erred by admitting the ATM photographs on the basis that Turner was not qualified to testify about the photographs.

11

Additionally, Petitioner has not demonstrated that the trial court erroneously admitted evidence of Petitioner's prior offenses.

In considering a claim based on a state court evidentiary ruling, the Eleventh Circuit has explained:

> We review state court evidentiary rulings on a petition for habeas corpus to determine only whether the error, if any, was of such magnitude as to deny petitioner his right to a fair trial. Erroneously admitted evidence deprives a defendant of fundamental fairness only if it was a crucial, critical, highly significant factor in the [defendant's] conviction.

*Jacobs v. Singletary*, 952 F.2d 1282, 1296 (11th Cir. 1992) (internal quotation marks and citations omitted). Additionally, in cases involving review of a state criminal judgment pursuant to 28 U.S.C. § 2254, "an error is harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Fry v. Pliler*, 551 U.S. 112, 116, 127 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)).

Pursuant to Florida law,

> If no witness who is available has seen what a videotape or a photograph depicts, proof of surrounding circumstances may nevertheless "be sufficient for the court to find that the photograph is a fair and accurate representation of a material fact." Ehrhardt, supra, § 401.2, at 114. This approach reflects resort to the so-called "silent witness" theory, *see generally Hannewacker v. City of Jacksonville Beach*, 419 So. 2d 308, 311 (Fla. 1982), which entails proof of foundational facts establishing the reliability of the process that yielded the photographic images, taking into account the following factors:
>
> > (1) evidence establishing the time and date of

the photographic evidence;

(2) any evidence of editing or tampering;

(3) the operating condition and capability of the equipment producing the photographic evidence as it relates to the accuracy and reliability of the photographic product;

(4) the procedure employed as it relates to the preparation, testing, operation, and security of the equipment used to produce the photographic product, including the security of the product itself; and

(5) testimony identifying the relevant participants depicted in the photographic evidence.

*Bryant v. State*, 810 So. 2d 532, 536 (Fla. 1st DCA 2002) (quoting *Wagner v. State*, 707 So. 2d 827, 831 (Fla. 1st DCA 1998)).

Turner testified that the ATM cameras which took the photographs were maintained by Bank of America.   (App. B at 579-80.)   Turner indicated that to her knowledge, there had never been any problems with the ATM cameras which took the photographs.   *Id.* at 581.   She said that the pertinent ATM transactions occurred on February 8 and 9, 2004, and she pulled the photographs from the ATM on approximately February 8 or 9, 2004.   *Id.* at 562-68, 583, 597.   Turner also testified that the photographs were taken at the pertinent ATM locations at the same time or within less than a minute of the ATM transactions from the Cyber Tech Academy account.   *Id.* at 591-93, 604.   She also said that she reviewed the ATM tapes a few minutes before and after the relevant

13

transactions to ensure there were no other photographs.    *Id.*    Turner stated that the ATM photographs are maintained and stored by Bank of America for a period of time in the regular course of business and that she was the custodian of records for all Bank of America records and photographs.    *Id.* at 59-94.    From the testimony before the trial court, a finding could have been made that the photographic evidence was reliable and, therefore, admissible. Moreover, as discussed above, the admission of the photographs was not a highly significant factor in Petitioner's conviction given that the individual in the photographs could not be identified and the substantial evidence against Petitioner. Thus, any error in the admission of the photographs was harmless.

As to Petitioner's contention that Pearson improperly testified about his prior offenses, this claim is refuted.    Pearson did not testify that Petitioner committed any crimes prior to those at issue in this case.    (App. B at 626-28.)    Thus, there was no evidence admitted regarding Petitioner's prior bad acts or crimes.

With respect to claims eight (e) and (f), Petitioner has not demonstrated either deficient performance or prejudice.    None of the statements made by the prosecutor in closing argument were impermissible.    *See* App. B at 798-820.    The prosecutor's statements were summarizations of the evidence presented and were reasonable inferences that could be drawn from the evidence.    Moreover, the trial judge instructed the jury that nothing the attorneys said was evidence and that only the evidence presented at trial could be considered in determining Petitioner's guilt.    *Id.* at 793, 853. The trial court further instructed the jury about the State's burden of proof.    *Id.* at 852-

14

53.   In sum, counsel had no basis to object to the prosecutor's statements, and no prejudice resulted from counsel's failure to do so.

Likewise, counsel did not render deficient performance by failing to argue that Turner was not qualified to testify about the ATM photographs because as discussed *supra,* the trial court could have determined from Turner's testimony that she was qualified to testify about the ATM photographs.   More importantly, Petitioner has not demonstrated that prejudice resulted from counsel's failure to object to Turner's testimony given that the evidence against Petitioner was overwhelming even without the photographs.   Consequently, claims one, two, and eight (e) and (f) would be denied if they were not procedurally barred from review.

   **B.   *Claim Three***

Petitioner asserts the trial court erred by allowing Pearson to comment on his guilt. In support of this claim, Petitioner notes that the prosecutor asked Pearson if she knew that she had assisted Petitioner in committing a crime to which she responded affirmatively.

Petitioner raised this claim on direct appeal.   The Fifth District Court of Appeal of Florida affirmed *per curiam.*

The record reflects that the prosecutor asked Pearson if she knew she had aided Petitioner in committing a crime.   Pearson responded affirmatively.   Counsel moved for a mistrial.   The trial court denied the motion but instructed the jury it was their function to determine whether any crime had been committed in the case.   (App. B at

15

625-26.)   Any prejudice from Pearson's statement, therefore, was negated by the trial court's instruction.   Moreover, Pearson's statement was not a highly significant factor in Petitioner's conviction in light of the overwhelming evidence.   Accordingly, claim three is denied pursuant to Section 2254(d).

C.    *Claim Four*

Petitioner asserts that the prosecution impermissibly commented on his right not to testify.   Specifically, Petitioner relies on the prosecutor's statement in closing argument that "it appears to be uncontested that the crimes were committed based on the opening [statement] of the defense."   (App. B at 800.)

Petitioner raised this claim on direct appeal.   The Fifth District Court of Appeal of Florida affirmed *per curiam*.

Review of the record establishes that the prosecutor was not commenting on Petitioner's decision not to testify.   Instead, the prosecutor was arguing that the defense conceded in opening statement that crimes were committed, but the pertinent issue was whether Petitioner committed the offenses.   (App. B at 800-01.)   Moreover, the trial court instructed the jury that Petitioner exercised his constitutional right not to testify and such action should not be considered an admission of guilt or influence the jury's decision in any way.    *Id*. at 855.    Consequently, Petitioner has not established that the prosecutor's statement was improper or that any harm resulted from the statement. Accordingly, claim four is denied pursuant to Section 2254(d).

16

E.      *Claim Five*

Petitioner maintains that the trial court improperly instructed the jury as to the offense of grand theft.   In support of this claim, Petitioner argues that the trial court erroneously instructed the jury that proof of possession of recently stolen property, absent a satisfactory explanation, gives rise to an inference that the person either knew or should have known the property was stolen.

Petitioner raised this claim in his Rule 3.850 motion.   The Fifth District Court of Appeal affirmed *per curiam*.

The Eleventh Circuit has held "[q]uestions of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes.     A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."   *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983) (citations omitted).   Moreover, "[a] defective jury charge raises an issue of constitutional dimension only if it renders the entire trial fundamentally unfair." *Carrizales*, 699 F.2d at 1055 (citing *Smith v. Smith*, 454 F.2d 572, 579 (5th Cir. 1971)).

The state court's jury instruction on grand theft pursuant to state law does not raise a constitutional issue and is entitled to deference.   Furthermore, Petitioner has not demonstrated that the grand theft instruction is either contrary to, or an unreasonable application of, Supreme Court precedent.   Petitioner has not cited to, nor is this Court aware of, any case from the Supreme Court of the United States prohibiting such an

17

instruction.    Additionally, the Court notes that the trial court dismissed the grand theft conviction.    Thus, any purported error in the grand theft instruction was harmless.    In sum, claim five is denied pursuant to Section 2254(d).

>    **F.    Claim Six**

Petitioner contends that the trial court erred by denying his request for special verdicts listing the predicate acts found by the jury.    Petitioner maintains that this deprived him of his right to a unanimous verdict.

Petitioner raised this claim on direct appeal.    The Fifth District Court of Appeal of Florida affirmed *per curiam.*

Petitioner has not demonstrated that the state court's denial of his request for a special verdict rendered his trial fundamentally unfair.    The trial court instructed the jury that it must unanimously agree that the State had proven beyond a reasonable doubt that Petitioner committed two of the same predicate incidents.    (App. B at 842.)    Thus, the jury unanimously found that Petitioner committed at least two of the same predicate incidents.    Moreover, as noted by the Supreme Court of the United States, "'[i]t is one thing to negate a verdict that, while supported by evidence, may have been based on an erroneous view of the law; it is another to do so merely on the chance—remote, it seems to us—that the jury convicted on a ground that was not supported by adequate evidence when there existed alternative grounds for which the evidence was sufficient.'"    *Griffin v. United States*, 502 U.S. 46, 59-60 (1991) (quoting *United States v. Townsend*, 924 F.2d 1385,

1414 (7th Cir. 1991)).   Therefore, reversal of a conviction is not warranted when a general verdict could have rested upon a theory of liability lacking adequate evidentiary support, but an alternative theory of guilt existed for which the evidence was sufficient.   *Id*. at 60 (concluding that the district court may in its discretion give an instruction eliminating from the jury's consideration a basis of liability that does not have adequate evidentiary support; however, such action is not mandated).   Accordingly, claim six is denied pursuant to Section 2254(d).

### G.   Claim Seven

Petitioner asserts that the trial court erred by denying his motion for judgment of acquittal.   Petitioner argues that the evidence was not sufficient to establish the elements of the offenses.

Petitioner raised this claim on direct appeal.   The Fifth District Court of Appeal of Florida affirmed *per curiam.*

The standard of review in a federal habeas corpus proceeding when the claim is one of sufficiency of the evidence was articulated in *Jackson v. Virginia,* 443 U.S. 307 (1979). In *Jackson*, the Court concluded that when considering a claim of insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."   *Jackson*, 443 U.S. at 319; *Johnson v. Alabama,* 256 F.3d 1156, 1172 (11th Cir. 2001).   Federal courts may not reweigh the evidence.   *Jackson*,

443 U.S. at 319.

It is the duty of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts.   *Id.*

As discussed *supra* in section III (A), the evidence of Petitioner's guilt was overwhelming.   The Court concludes that viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of racketeering, organized fraud, identity theft of victim under eighteen, and identity theft of adult victim beyond a reasonable doubt.   *See* Fla. Stat. § 895.03(3) (defining offense of racketeering); Fla. Stat. § 817.034 (defining offense of organized fraud); Fla. Stat. § 817.568(6) (defining offense of identity theft of person under eighteen); Fla. Stat. §   817.568(2) (defining offense of identity theft).   Thus, the state court's denial of Petitioner's motion for judgment of acquittal was not contrary to, or an unreasonable application of, federal law, and claim two is denied.

### H.   Claims Eight (a), (b), and (c)

Petitioner contends that counsel rendered ineffective assistance by failing to discover the ATM photographs and advise him about them during plea negotiations (claim eight (a)).   Petitioner also asserts that counsel rendered ineffective assistance by failing to depose Turner so as to discover the existence of the ATM photographs (claim eight(b)).   Likewise, Petitioner maintains that counsel rendered ineffective assistance by failing to properly prepare for trial and by allowing a discovery violation to occur (claim

eight(c)).    Petitioner essentially contends in all of these claims that had counsel

discovered the ATM photographs and advised him accordingly, he would have accepted

the State's plea offer of eight years and not proceeded to trial.

Petitioner raised these claims in his Rule 3.850 motion.    The state court

determined that claims eight (a) and (b) were procedurally barred because they were

raised on direct appeal.[3]    (App. X at 2-3.)    Nevertheless, the state court determined that

Petitioner failed to demonstrate prejudice under *Strickland* as to claims eight (a)-(c).    *Id.*

at 3, 5-6.    The state court concluded that a reasonable probability did not exist that

Petitioner would not have proceeded to trial had counsel deposed Turner, discovered the

ATM photographs, or advised him about the photographs during the plea negotiations.

*Id.*    The state court reasoned that Petitioner conceded on direct appeal that "the

---

[3]Respondents contend that claims eight (a) and (b) are procedurally barred from review based on the state court's determination that they were procedurally barred. Florida courts have held "'unless a direct appeal is affirmed with a written opinion that expressly addresses the issue of ineffective assistance of counsel, an affirmance on direct appeal should rarely, if ever, be treated as a procedural bar to a claim for ineffective assistance of counsel on a postconviction motion.'"    *Hamilton v. State* 979 So. 2d 420, 423 (Fla. 2d DCA 2008) (quoting *Acosta v. State*, 884 So. 2d 278, 279 (Fla. 2d DCA 2004)). Petitioner did not raise any claims of ineffective assistance of counsel on direct appeal, nor did the Fifth District Court of Appeal issue a written opinion expressly addressing such a claim.    As such, the Court concludes that the state courts determination regarding the procedural bar is not based on an adequate state rule.    *See Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) ("the state rule must be adequate, *i.e.*, it must not be applied in an arbitrary or unprecedented fashion.    The state courts procedural rule cannot be 'manifestly unfair' in its treatment of the petitioner's federal constitutional claim to be considered adequate for the purposes of the procedural default doctrine.").    Thus, the Court will consider the merits of claims eight (a) and (b).

photographs were of such poor quality that no one could identify them as [Petitioner] at trial." *Id*. at 3.   The state court further noted that after the ATM photographs were admitted, Petitioner told the trial court that he was very satisfied with his attorney's performance and did not indicate that he would have entered a plea had he known of the photographs.   *Id*. at 6.

Review of the record establishes that trial counsel objected to the admission of the ATM photographs.   Specifically, counsel maintained that he had not been provided the ATM photographs.   (App. B at 572-73.)   The trial court conducted a *Richardson* [4] hearing to determine if a discovery violation had occurred, and if so, whether the photographs should be excluded.   *Id*. at 573.   The prosecutor initially maintained that the ATM photographs had been provided to the defense, but later conceded that the photographs may have been misplaced and further argued that no prejudice had resulted.   *Id*. at 573-74, 588.   Defense counsel argued that absent the discovery violation, he would have reviewed the photographs with Petitioner, investigated the ATM machine that took the photographs, and sought to find witnesses who may have seen the individual depicted in the photographs.   *Id*. at 576-78.   Counsel further noted that if he had known of the photographs, "[w]e may not have gone to trial.   We may

---

[4] *Richardson v. State,* 246 So. 2d 771 (Fla. 1971) (holding that once a discovery violation is revealed, the trial court must conduct an inquiry to determine the sanctions that should be imposed on the violating party).

have been more willing to negotiate if this evidence had been presented to us at the very beginning.   It does change the whole strategy." *Id*. at 578-79.

The trial court overruled counsel's objection to the admission of the photographs, finding that counsel had received an investigative report which noted that the prosecution had the photographs, and thus, counsel could have discovered them with further inquiry. *Id*. at 586-87.   The trial court allowed Petitioner an opportunity to speak to counsel regarding whether he wanted to enter a plea after the prosecutor noted that the ten-year plea offer was no longer available. *Id*. at 587.   Subsequent to speaking with Petitioner, defense counsel advised the court that Petitioner did not want to enter a plea. *Id*. at 588.   Thereafter, the photographs were admitted.   Nevertheless, Turner testified that the quality of the photographs was such that the individual in the photographs could not be identified. *Id*. at 597-98

Petitioner has not established that the state court's denial of these claims are contrary to, or an unreasonable application of, *Strickland*.   Initially, the Court notes that counsel made a discovery request for evidence such as the ATM photographs.   The state court did not make an actual finding of whether the prosecution failed to provide defense counsel with the photographs.   As such, it is arguable whether counsel was deficient for failing to discover the ATM photographs or advise Petitioner about them during the plea negotiations.

Nevertheless, even assuming counsel was deficient for failing to discover the

photographs, depose Turner, or advise Petitioner of the photographs during plea negotiations, Petitioner has not shown that prejudice resulted therefrom.   Although Petitioner did not know about the ATM photographs, he rejected the State's eight-year plea offer despite knowing that substantial evidence against him existed as detailed in section III (A) *supra*.   Furthermore, when the state court ruled that the photographs were admissible, Petitioner was provided an opportunity to enter a plea, albeit not the plea originally offered by the State, but he chose to continue the trial.   Petitioner's probable reason for doing so is reflected in his appellate brief on direct appeal, namely "the photo was so fuzzy that none of the State's witnesses, nor the court could identify the person in it."   (Doc. No. 17-1 at 16.)   Moreover, after closing argument, the trial court asked Petitioner is he was "totally satisfied with the representation [he] received in the case" to which Petitioner responded, "Yes, very, Your Honor."   (App. B at 862.)   Petitioner never told the trial court, even after the disclosure of the ATM photographs, that he wanted to enter a plea or wanted the State to place the eight-year plea offer back on the table. Finally, Petitioner argued at sentencing that Pearson orchestrated the scheme, the schools belonged to her, and he only completed the paperwork to set up the schools for Pearson. *Id.* at 884-87.   In sum, the evidence before the Court demonstrates that a reasonable probability does not exist that Petitioner in fact would have accepted the State's eight-year plea offer had counsel advised him of the "fuzzy" ATM photographs. [5]

---

[5]To the extent Petitioner asserts in claim eight (b) that had counsel deposed Turner,

Accordingly, claims eight (a)-(c) are denied pursuant to Section 2254(d).

 **I.**  *Claim Eight (d)*

 Petitioner asserts counsel rendered ineffective assistance by failing to investigate and move to suppress illegally seized evidence.   In support of this claim, Petitioner maintains that he was arrested outside of his home, was not offered proper *Miranda*[6] warnings, was refused his request to speak to an attorney, and did not give consent to search his home.   (Doc. No. 1 at 29-30.)   Petitioner contends that as a result of the illegal search, Pearson's file was discovered and admitted against him at trial.   *Id.*

 Petitioner raised this claim in his Rule 3.850 motion.   The state court denied the claim.   (App. X at 8.)   The state court reasoned that no evidence was illegally seized because Petitioner voluntarily gave Walker the information he had in his office concerning Primary Prep School.   *Id.*   The state court concluded, therefore, that no prejudice resulted from counsel's failure to file a motion to suppress.   *Id.*

 Petitioner has not established that a reasonable probability exists that the "Pearson file" would have been suppressed had such a motion been filed or that he would have

---

then counsel could have considered whether to file a motion to suppress the ATM photographs, Petitioner has not demonstrated that prejudice resulted.   Petitioner has not established that any legal basis existed to suppress the photographs, except for the potential discovery violation.   More importantly, even if the ATM photographs had been suppressed, no reasonable probability exists that Petitioner would have been acquitted in light of the substantial evidence presented at trial.

 [6]*Miranda v. Arizona*, 384 U.S. 436 (1966).

been acquitted had the evidence been suppressed.   Walker's investigative report indicates that although Petitioner did not consent to a search of his home, he "voluntarily gave [Walker] the information he had regarding Primary Prep School." (App. W, Ex. A1.) The report further provides that Petitioner "advised [her] where the documents were in the room pertaining to Primary Prep School and the documents were subsequently photographed and seized with voluntary consent from [Petitioner]."   In accordance with the report, Walker testified at trial that Petitioner gave her the items on the day he was arrested.   (App. B at 683, 686, 713.)   In fact, defense counsel asked Walker, "Now, when you got these documents from Mr. Hollis, and the day that you effectuated an arrest, he gave them to you, right?", to which she responded, "[y]es, he gave them to me."   (App. B at 713.)   Walker further indicated that Petitioner would not allow her to seize his computer, and thus, the computer was never taken.   *Id.*

In light of Walker's testimony, evidence existed for the trial court to determine that the "Pearson file" was voluntarily given to Walker by Petitioner.   Moreover, Petitioner heard defense counsel question Walker about the documents, heard her testimony that Petitioner had given her the documents, and clearly knew that the documents were admitted into evidence.   Nevertheless, nothing in the record suggests that Petitioner advised his trial counsel that the documents were seized without his permission, and Petitioner affirmed that he was very satisfied with his attorney at the conclusion of the trial.   Finally, even if the "Pearson file" had been excluded, the evidence against

26

Petitioner was still substantial, including the testimony of Kee and Pearson and witnesses whose testimony substantiated their testimony.   The Court concludes, therefore, that Petitioner has not demonstrated that prejudice resulted from counsel's failure to file a motion to suppress.   Accordingly, claim eight (d) is denied pursuant to Section 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.   *Certificate of Appealability*

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009).   When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934.   However, a prisoner need not show that the appeal will succeed.   *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the district

27

court's assessment of the constitutional claims debatable or wrong.     Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable.     Petitioner has failed to make a substantial showing of the denial of a constitutional right.     Thus, the Court will deny Petitioner a certificate of appealability.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.      The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Anthony Hollis is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.      Petitioner is **DENIED** a Certificate of Appealability.

3.      The Clerk of the Court is directed to enter judgment accordingly and close this case.

**DONE AND ORDERED** in Orlando, Florida, this 3rd day of February, 2014.

ROY B. DALTON JR.
United States District Judge

Copies to:
OrlP-1 2/3
Counsel of Record
Anthony Hollis